## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION and THE SURFRIDER FOUNDATION,<br><br>       Plaintiffs,<br><br> *v*.<br><br>JEFFREY A. ROSEN, in his official capacity;[*] U.S. DEPARTMENT OF JUSTICE; ANDREW WHEELER, in his official capacity; U.S. ENVIRONMENTAL PROTECTION AGENCY, and JEFFREY BOSSERT CLARK, in his official capacity,<br><br>       Defendants. | Civil Action No.<br>1:20-CV-11827-ADB |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## ***ORAL ARGUMENT REQUESTED***

---

[*] Acting Attorney General Rosen is automatically substituted for William P. Barr as the named defendant pursuant to Federal Rule of Civil Procedure 25(d).

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION...............................................................................................................1

BACKGROUND.................................................................................................................3

STANDARD OF REVIEW .................................................................................................8

    A.  MOTION TO DISMISS UNDER RULE 12(b)(1)......................................................8

    B.  THE ADMINISTRATIVE PROCEDURE ACT........................................................8

ARGUMENT .....................................................................................................................8

    I.  THE CHALLENGED POLICY IS A CIVIL ENFORCEMENT DECISION "COMMITTED TO AGENCY DISCRETION BY LAW.".......................................8

    II.  IN THE ABSENCE OF A LIVE DISPUTE ABOUT A SPECIFIC AND CONCRETE APPLICATION OF THE CLARK MEMO, PLAINTIFFS CANNOT DEMONSTRATE STANDING TO SUE. .............................................................10

    III. PLAINTIFFS' CLAIMS ARE NOT RIPE.............................................................15

    IV. THE CLARK MEMO IS NOT A "FINAL AGENCY ACTION."...........................17

CONCLUSION.................................................................................................................19

# TABLE OF AUTHORITIES

**Page**

### Cases

*Abbott Labs v. Gardner,*
  387 U.S. 136 (1967)...........................................................................16

*Baltimore Gas and Elec. Co. v. Fed. Energy Reg. Comm'n,*
  252 F.3d 456 (D.C. Cir. 2001) ...............................................9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................3, 18

*Bennett v. Spear,*
  520 U.S. 154 (1997)........................................................11, 15, 17

*CASA de Md., Inc. v. Trump,*
  971 F.3d 220 (4th Cir. 2020) .................................................12

*City of New York v. U.S. Dep't of,*
  *Def.*, 913 F.3d 423 (4th Cir. 2019) .....................................17

*Clapper v. Amnesty Intern. USA,*
  568 U.S. 398 (2013)......................................................12, 13, 15

*Draper v. Healey,*
  827 F.3d 1 (1st Cir. 2016) .......................................................11

*Firefighters v. City of Cleveland,*
  478 U.S. 501 (1986) .................................................................5

*Fla. Audubon Soc'y v. Bentsen,*
  94 F.3d 658 (D.C. Cir. 1996).............................................13, 14

*Florida Power & Light Co. v. Lorion,*
  470 U.S.729 (1985)...............................................................10, 14

*FTC v. Standard Oil Co.,*
  449 U.S. 232 (1980)................................................................17

*Heckler v. Chaney,*
  470 U.S. 821 (1985)..........................................................1, 9, 10

*Hochendoner v. Genzyme Corp.,*
  823 F.3d 724 (1st Cir. 2016).................................................11

*In re Curran*,
  855 F.3d 19 (1st Cir. 2017) ........................................................................... 3

*Int'l Union United Auto., Aerospace & Agr. Implement Workers of America v. Brock*,
  783 F.2d 237 (D.C. Cir. 1986) ...................................................................... 9

*Jalbert v. U.S. Sec. & Exch. Comm'n*,
  945 F.3d 587 (1st Cir. 2019) ......................................................................... 3

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012) ....................................................................12, 13

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ...................................................................................... 8

*Laird v. Tatum*,
  408 U.S. 1 (1972) .........................................................................................12

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) .....................................................................................12

*Lujan v. Defenders. of Wildlife*,
  504 U.S. 555 (1992) .................................................................... 11, 15, 17

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990) .....................................................................................15

*Murphy v. U.S.*,
  45 F.3d 520 (1st Cir. 1995) ........................................................................... 8

*Nat'l Park Hospitality Ass'n v. Dept. of the Interior*,
  538 U.S. 803 (2003) .....................................................................................17

*Ohio Forestry Ass'n. v. Sierra Club*,
  523 U.S. 726 (1998) .....................................................................................16

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  632 F.3d 762 (1st Cir. 2011) ........................................................................19

*Reno v. Catholic Social Services, Inc.*,
  509 U.S. 43 (1993) ..................................................................................16, 17

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) .....................................................................................11

*Sea Shore Corp. v. Sullivan*,
  158 F.3d 51 (1st Cir. 1998) ..........................................................................12

*Seavey v. Barnhart*,
   276 F.3d 1 (1st Cir. 2001) ..................................................................10

*Sierra Club, Inc. v. Granite Shore Power LLC*,
   No. 19-CV-216-JL, 2019 WL 8407255 (D.N.H. Sept. 13, 2019)..........................19

*Speed Mining, Inc. v. Fed. Mine Safety and Health Review Comm'n*,
   528 F.3d 310 (4th Cir. 2008) ................................................................9

*Stone v. U.S. Embassy Tokyo*,
   No. 19-3273, 2020 WL 6746925 (D.D.C. Nov. 16, 2020)..................................18

*Summers v. Earth Island Inst.*,
   555 U.S. 488, at (2009) .................................................................12, 13

*U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC*,
   339 F.3d 23 (1st Cir. 2003) ..................................................................4

*United Public Workers of Am. v. Mitchell*,
   330 U.S. 75 (1947)..........................................................................10

*United States v. Bormes*,
   568 U.S. 6 (2012) ...........................................................................8

*United States v. Mitchell*,
   445 U.S. 535 (1980).........................................................................8

*United States v. Navajo Nation*,
   556 U.S. 287 (2009).........................................................................8

*Warth v. Seldin*,
   422 U.S. 490 (1975).........................................................................10

## Statutes

31 U.S.C. § 1341 ..............................................................................6

31 U.S.C. § 1349(a) ..........................................................................6

31 U.S.C. § 1350 ..............................................................................6

31 U.S.C. § 3302 ..............................................................................2
   31 U.S.C. § 3302(a) .......................................................................6
   31 U.S.C. § 3302(b) ..................................................................4, 5, 6
   31 U.S.C. § 3302(d) .......................................................................6

33 U.S.C. § 1319(b)...........................................................................3

42 U.S.C. § 16138 .......................................................................5, 6, 9

42 U.S.C. § 7413(b) ........................................................................................... 3

5 U.S.C. § 701(a)(2) .......................................................................................2, 8

5 U.S.C. § 702 .............................................................................................8, 17

5 U.S.C. § 706 ................................................................................................14

## Regulations

28 C.F.R. 50.28 .........................................................................................7, 15
    28 C.F.R. 50.28(b) ........................................................................................ 7
    28 C.F.R. 50.28(c)(1) .................................................................................... 8

## Federal Documents

85 Fed. Reg. 81,409 (Dec. 16, 2020) ...................................................... 7

EPA, Supplemental Environmental Projects Policy 2015 Update (Mar. 10, 2015) ...................1, 4

*Letter to the Chairman of Subcommittee on Oversight and Investigations, House Committee on Energy and Commerce*, B-247155.2, 1993 WL 798227 (Comp. Gen. March 1, 1993) ............ 6

Office of Legal Counsel, Opinion Letter, 4B Op. O.L.C. 684 (1980) ........................................ 6

"Prohibition on Settlement Payments to Third Parties" (June 5, 2017) ...................................... 7

"Supplemental Environmental Projects ('SEPS') in Civil Settlements with Private Defendants" (March 12, 2020) .................................................................................. 7, 14, 18

## Periodicals and Journals

David A. Dana, *The Uncertain Merits of Environmental Enforcement Reform: The Case of Supplemental Environmental Projects*, 1998 Wis. L. Rev. 1181 (1998) .................................. 5

Robert Jackson, *The Federal Prosecutor*, 31 J. Crim. L. 3 (1940) ............................................. 1

Thomas O. McGarity, *Supplemental Environmental Projects in Complex Environmental Litigation*, 98 Tex. L. Rev. 1405 (2020) ............................................................ 4, 5

# INTRODUCTION

The power to enforce federal law lies with the executive branch of the federal government. As Justice Jackson observed, however: "Law enforcement is not automatic." Robert Jackson, *The Federal Prosecutor*, 31 J. Crim. L. 3, 5 (1940). It requires the use of enforcement discretion, both about what cases to pursue and what relief to seek. As the Supreme Court has explained, this "involves a complicated balancing of a number of factors which are peculiarly within [the executive's] expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Thus, absent clear congressional direction to the contrary, decisions *not* to seek civil enforcement relief are "committed to an agency's *absolute* discretion." *Id.* (emphasis added). These same principles apply to prosecutors' discretion not to seek and agree to particular terms of settlements.

Plaintiffs, the Conservation Law Foundation ("CLF") and the Surfrider Foundation ("Surfrider") (collectively, "Plaintiffs"), ask this Court to ignore this rule. They seek an advisory opinion about what kinds of relief the Department of Justice ("DOJ" or the "Department") and the U.S. Environmental Protection Agency ("EPA") should seek in hypothetical future civil and administrative environmental enforcement settlements. They do this by bringing a facial challenge to an internal memorandum (the "Clark Memo") written by Assistant Attorney General ("AAG") Jeffrey Bossert Clark, the head of the Department's Environment and Natural Resources Division ("ENRD"). *See* Exhibit 1. That memo concludes that, unless explicitly authorized by statute, ENRD's attorneys should no longer include "Supplemental Environmental Projects" or "SEPs" in civil enforcement settlements.

A SEP is an "environmentally beneficial project or activity that is ***not required by law***, but that a defendant agrees to undertake as part of the settlement of an enforcement action" in exchange for a lower civil penalty. EPA, Supplemental Environmental Projects Policy 2015 Update, at 1

1

(Mar. 10, 2015) ("2015 SEP Policy") (emphasis added). A SEP is not equitable relief, like mitigation, nor can a court award a SEP after trial to judgment. So the executive could obtain a SEP only if federal enforcers exercised their prosecutorial discretion to settle the environmental penalty claims of the government. Prior to the Clark Memo, ENRD did so in exchange for defendants undertaking these special projects that Congress did not approve—instead of paying penalties to the Treasury. The Clark Memo reasons that this exchange wrongly diverts "money for the government" away from the Treasury in violation of both the Miscellaneous Receipts Act, 31 U.S.C. § 3302, (the "MRA") and sound public policy.

Plaintiffs disagree and demand that the Clark Memo's legal conclusion "be vacated." *See, e.g.,* ECF. No. 23 ¶¶ 83, 138-39 (hereinafter the "A.C."). But while Plaintiffs' arguments might make for an interesting academic debate, they have failed to allege any justiciable "case or controversy" for at least three reasons.

*First*, there is no legal right to SEPs. Indeed, there is scant legal basis for them at all. The SEPs prohibited by the Clark Memo are not authorized, much less required, by any federal statute. Thus, under the Administrative Procedure Act ("APA"), AAG Clark's directive is a paradigmatic example of an unreviewable enforcement decision "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

*Second*, the "harms" Plaintiffs allege are insufficient to establish either standing or ripeness. Plaintiffs fail to show any "concrete," "particularized," and "imminent" harm, but only assert generalized fears. They speculate (1) about potential benefits of future SEPs to unspecified members of their respective organizations that might not be realized in future enforcement settlements with as-yet unknown defendants in which no federal official need ever concur; and (2) that Plaintiff CLF will have to bring more citizen suits of its own in the future to avoid this feared shortfall. Decades of Supreme Court precedent prohibit suits premised on such speculative "harms." Such

vague "injuries" also are not redressable by this suit because, regardless of the Clark Memo, the government has no legal obligation to ever include a SEP in an enforcement settlement. It is unclear what it would mean to "vacate" the legal analysis of a federal law enforcement official who, regardless of any policy memo, has discretion never to settle for a SEP and who has concluded that, even if they were lawful, SEPs are also bad public policy.[2] In any event, Plaintiffs' claims are not ripe because they bring a facial challenge that targets general agency policies rather than concrete agency decisions.

*Third*, the Clark Memo does not determine Plaintiffs' "rights" or "obligations," nor do any "legal consequences" flow to them from it. Plaintiffs' claims therefore also fail the APA's requirement that only final agency action may be challenged.

In light of these threshold deficiencies, Defendants respectfully request that Plaintiffs' Amended Complaint be dismissed for lack of subject matter jurisdiction. And, because Plaintiffs' faulty legal theories lie at the heart of their case, no amount of additional pleading will cure the Amended Complaint's errors. Defendants therefore respectfully submit that dismissal should be with prejudice. *See In re Curran*, 855 F.3d 19, 28-29 (1st Cir. 2017).

## BACKGROUND

With a few exceptions not relevant here, federal environmental statutes authorize only two forms of civil enforcement relief for violations of law: penalties payable to the Treasury and injunctive relief to secure compliance. *See, e.g.*, 42 U.S.C. § 7413(b) (Clean Air Act or "CAA"); 33

---

[2] Plaintiffs' challenge is focused solely on the legal analysis of the Clark Memo. And while they do allege that the policy portions of the memo "lack[] reasoned decision-making," A.C. ¶ 140, the Amended Complaint does not support this assertion with any explanation or supporting facts. Such "labels and conclusions" are not entitled to any presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Jalbert v. U.S. Sec. & Exch. Comm'n*, 945 F.3d 587, 591 (1st Cir. 2019).

U.S.C. § 1319(b) (Clean Water Act or "CWA"). Over the years, courts have construed their injunctive authority broadly, holding that they may issue both orders compelling a defendant to comply with the law going forward and "mitigation" and "restoration" orders to remedy the harm caused by their unlawful conduct. As the First Circuit has noted, however, such mitigation is limited to relief "*remedying harm caused by* [the] *past violations.*" *See U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC*, 339 F.3d 23, 31 (1st Cir. 2003).

SEPs emerged in the 1980s as a way of working around this limitation. Unlike mitigation orders, SEPs do not remedy the particular harm caused by the wrongdoing. Instead, they aim to benefit the environment or society more generally. Like penalties, SEPs direct the defendant to expend money or resources. But the payments or contributions are not made to the Treasury—as otherwise required by statute. 31 U.S.C. § 3302(b).

Getting money appropriated from the Treasury for special projects is hard. It depends on the closely watched Congressional appropriations processes. Competition for the scarce dollars in the Treasury, which might fund special interest projects, is fierce. SEPs are an easier road and, not surprisingly, they became quite popular with executive branch enforcement officials, defendants, and special interests. The incentive for defendants was that, in exchange for money spent on a SEP, the government would provide a substantial discount of the penalty amount it would otherwise have sought. In recent years, the maximum permitted degree of penalty reduction in most cases was 80 percent of the estimated cost of the SEP. *See* 2015 SEPs Policy at 24. Many defendants preferred this trade off because it allowed them to escape the bad press and ignominy of paying a large civil penalty. And it simultaneously let them project an environmentally friendly image— a PR strategy known as "greenwashing." *See* Thomas O. McGarity, *Supplemental Environmental Projects in Complex Environmental Litigation*, 98 Tex. L. Rev. 1405, 1423 (2020). The executive

branch and special interests, meanwhile, could use environmental settlements to fund local projects they desired—without conferring with and having limitations from Congress.

Despite their popularity, SEPs have long been a subject of debate. Defenders claim that SEPs are efficient tools for encouraging settlement and improving environmental quality. Critics, however, note that SEPs incur a substantial opportunity cost for the government (in particular, for Congress). And "greenwashing" lessens the deterrent value of enforcement and risks unfairly benefitting well-connected organizations and communities at the expense of others. *Compare, e.g.*, McGarity, *supra*, at 413-28, *with* David A. Dana, *The Uncertain Merits of Environmental Enforcement Reform: The Case of Supplemental Environmental Projects*, 1998 Wis. L. Rev. 1181, 1184 (1998).

For its part, Congress has generally not been persuaded of the value of SEPs. It has authorized the federal government to seek them in only one statute: a 2008 addition to the CAA that provides that EPA "may accept . . . diesel emissions reduction [SEPs]" in civil enforcement settlements. 42 U.S.C. § 16138. Beyond this, no law authorizes the federal government to obtain SEPs in civil environmental enforcement cases, and federal courts therefore lack the authority to order them. Thus, the use of SEPs in federal court has been cabined solely to consent decrees, on the theory that courts may not reject a proposed consent decree merely because it "provides broader relief than the court could have awarded after a trial." *Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986).

The legality of this approach has been a subject of disagreement. SEPs reduce the penalty amount payable to the Treasury in exchange for the defendant's commitment to perform a project selected by the parties. As skeptics have noted, however, the Constitution gives *Congress* the power of the purse, which it has jealously guarded with both the MRA, 31 U.S.C. § 3302(b), and

the Antideficiency Act ("ADA"), *id.* § 1341. The MRA provides that federal officials who "re-
ceive[] money for the Government" must deposit it into Treasury; they may not "us[e]" "public
money" or "exchang[e] [it] for other amounts." *Id.* § 3302(a), (b). The ADA prohibits officials
from expending funds or incurring obligations in excess of congressional appropriations. 31 U.S.C.
§ 1341. The consequences for violating these laws can be significant, including removal from
office, *id.* §§ 3302(d); 1349(a), and—for knowing and willful violations of the ADA—felony crim-
inal liability, *id.* § 1350.

In light of these provisions, senior government officials have found SEPs to be impermis-
sible. For example, a 1980 opinion issued by DOJ's Office of Legal Counsel ("OLC") concluded
that a proposed SEP-like settlement provision violated a predecessor statute of the MRA. 4B Op.
O.L.C. 684, 684-85 (1980). OLC explained that "money available to the United States and directed
to another recipient is constructively 'received'"; thus, the fact that "no cash actually touches the
palm of a federal official is irrelevant . . . if a federal agency *could have accepted possession* and
retains discretion to direct the use of the money." *Id.* at 688 (emphasis added). Similarly, in 1993,
the U.S. Comptroller General determined that a SEP which EPA had approved would allow "al-
leged violators to make payments to an institution other than the federal government . . . in lieu of
penalties paid to the Treasury," allowing "the agency to improperly augment its appropriations for
. . . other purposes, in circumvention of the congressional appropriations process." *Letter to the
Chairman of Subcommittee on Oversight and Investigations, House Committee on Energy and
Commerce*, B-247155.2, 1993 WL 798227 at *2 (Comp. Gen. March 1, 1993).

Congress has indicated that these MRA and ADA concerns are valid by noting in 42 U.S.C.
§ 16138 that the authorization of diesel emissions SEPs in the CAA was made "notwithstand-
ing sections 3302 and 1301 of Title 31," *i.e.*, the MRA and the ADA. The clear implication is that,

without express congressional authorization, diesel emission SEPs (and so all SEPs) *do* violate the MRA and the ADA.

The legality of SEPs nevertheless remained an open question. After lying relatively dormant, the controversy received renewed interest beginning in 2017 when the Attorney General issued a memorandum prohibiting nearly all third-party payments in federal settlements. *See* "Prohibition on Settlement Payments to Third Parties" (June 5, 2017). AAG Clark subsequently published the memorandum at issue here, concluding that congressionally unauthorized SEPs are prohibited by the 2017 memorandum and that they violate the letter and spirit of the MRA. Further, "even if SEPs were not *per se* unlawful, they tread too close to the line and should be disallowed as a matter of sound policy and prosecutorial discretion." "Supplemental Environmental Projects ('SEPS') in Civil Settlements with Private Defendants" at 18 (March 12, 2020) ("Clark Memo"). As he notes, "Congress' power of the purse is not a random allocation." *Id.* And unlike the executive, the "legislature is uniquely suited for the hurly burly of debating important public issues" and deciding how best to spend the public's money. *Id.* at 17. These conclusions do not apply to congressionally authorized SEPs or to any previous settlements; they are also internal, so do not apply to anyone outside of ENRD.

On December 16, 2020, the Department published a final rule that incorporated the substance of the Attorney General's 2017 memorandum into the Code of Federal Regulations. 85 Fed. Reg. 81,409 (Dec. 16, 2020). The rule creates a new provision, 28 C.F.R. 50.28, that bars DOJ attorneys from "enter[ing] into any agreement on behalf of the United States in settlement of federal claims or charges . . . that directs or provides for a payment or loan, in cash or kind, to any non-governmental person or entity that is not a party to the dispute." 28 C.F.R. 50.28(b). There is an exception for "restitution or compensation to a victim," but that exception provides that "in no case shall any such agreements require defendants in environmental cases, in lieu of payment to

7

the Federal Government, to expend funds to provide goods or services to third parties for Supplemental Environmental Projects." 28 C.F.R. 50.28(c)(1).

## STANDARD OF REVIEW

### A. MOTION TO DISMISS UNDER RULE 12(b)(1).

Federal courts "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, to survive a Rule 12(b)(1) Motion to Dismiss, a plaintiff must plead particular facts and identify a specific statute or constitutional provision that gives the court subject matter jurisdiction. *Murphy v. U.S.*, 45 F.3d 520, 522 (1st Cir. 1995).

### B. THE ADMINISTRATIVE PROCEDURE ACT.

The United States cannot be sued without its consent. *United States v. Bormes*, 568 U.S. 6, 9-10 (2012); *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009). Such consent cannot "be implied but must be unequivocally expressed" and, absent clear contrary congressional intent, must be narrowly construed. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The APA does not create a free-standing cause of action, but rather waives sovereign immunity *only* for claims by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

## ARGUMENT

### I.   THE CHALLENGED POLICY IS A CIVIL ENFORCEMENT DECISION "COMMITTED TO AGENCY DISCRETION BY LAW."

APA § 701(a)(2) expressly exempts from judicial review all agency actions "committed to agency discretion by law." Internal enforcement directives addressing what terms the U.S. will— and will not—include in some civil enforcement settlements are paradigmatic examples of such purely discretionary action. As the Supreme Court has noted, by their very nature, an agency's

"[r]efusals to take enforcement steps" are discretionary and therefore "should be presumed immune from judicial review under § 701(a)(2)." *Heckler*, 470 U.S. at 831-32.

Those who wish to rebut this presumption can do so only by showing that "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 833. That is, only where Congress "has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion," is there any "'law to apply' under § 701(a)(2)"; "if it has not, then an agency refusal to institute proceedings"—or "take enforcement steps"—"is a decision 'committed to agency discretion by law' within the meaning of that section." *Id.* at 832, 834-35; *see also Speed Mining, Inc. v. Fed. Mine Safety and Health Review Comm'n*, 528 F.3d 310, 317-18 (4th Cir. 2008).

No "intent to circumscribe agency enforcement discretion" and compel the use of SEPs is found here. To the contrary, SEPs are not commanded or encouraged by any federal environmental statute. In fact, with only one exception (42 U.S.C. § 16138), which is explicitly *not* prohibited in the Clark Memo, no federal statutes even *authorize* SEPs. Thus, the Clark Memo falls wholly within ENRD's unreviewable enforcement discretion. *Cf. Baltimore Gas and Elec. Co. v. Fed. Energy Reg. Comm'n*, 252 F.3d 456, 461-62 (D.C. Cir. 2001); *Int'l Union United Auto., Aerospace & Agr. Implement Workers of America v. Brock*, 783 F.2d 237, 244-45 (D.C. Cir. 1986).

Plaintiffs offer no serious test of these entrenched principles. Instead, the Amended Complaint reads like a tribute to the claimed virtues of SEPs, combined with an argument against selected portions of the Clark Memo's legal analysis. *See* A.C. ¶¶ 73-109. For example, Plaintiffs take issue with the Clark Memo based on their belief that SEPs often serve similar purposes to those advanced by the CWA and CAA. *Id.* at ¶ 9. And they criticize the memo's legal analysis, asserting that AAG Clark's "reading of the [MRA] is legally incorrect" (¶ 83). *See generally id.* ¶¶ 73-109.

9

These contentions are irrelevant. Even if Plaintiffs were correct, the *most* these allegations could show is that Congress has not *prohibited* the use of SEPs. Without meaningful statutory enforcement standards to which a reviewing court could compare AAG Clark's exercise of discretion, there is simply "no law to apply" under APA § 701(a)(2). Nor is there any federal court authority to tell a prosecutor that he or she must settle a case—let alone settle a case with particular provisions (*e.g.*, SEPs) that are not provided by law. Thus, while Plaintiffs may want an opinion disagreeing with Mr. Clark's legal and policy reasons for not using SEPs, they lack the necessary "hook" to obtain review under APA § 701(a)(2); any decision on the issues raised by Plaintiffs would be therefore be advisory and, consequently, flatly prohibited by Article III of the Constitution. *United Public Workers of Am. v. Mitchell*, 330 U.S. 75, 89 (1947).[3]

## II.   IN THE ABSENCE OF A LIVE DISPUTE ABOUT A SPECIFIC AND CONCRETE APPLICATION OF THE CLARK MEMO, PLAINTIFFS CANNOT DEMONSTRATE STANDING TO SUE.

Subject matter jurisdiction is also lacking here because Plaintiffs' facial challenges to the terms of hypothetical future settlements are too generalized and abstract to establish the kind of "personal stake in the outcome of the controversy" that would "warrant [the] invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The doctrine of standing ensures that a lawsuit is a "case or controversy" within the meaning of Article III of the Constitution by requiring plaintiffs to make three showings: (1) that they will suffer an "injury in fact," defined as "an invasion of a judicially cognizable interest" that (a) is "concrete and particularized," and (b)

---

[3] Plaintiffs also seek to "enjoin Defendants from implementing or relying on the Memorandum in any way." A.C. at 34. Even if they could articulate a valid APA claim, such a remedy is beyond the scope of that authorized by the APA. *Florida Power & Light Co. v. Lorion,* 470 U.S.729, 744 (1985); *Seavey v. Barnhart*, 276 F.3d 1, 12 (1st Cir. 2001). A mandatory injunction to settle cases with SEPs would also constitute a grave infringement on the constitutional separation of powers and the "absolute discretion" the executive possesses in the absence of constitutional or statutory constraints. *Heckler*, 470 U.S. at 831.

"actual and imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) that it is "'likely,' as opposed to merely 'speculative,'" that a favorable decision will prevent or redress the injury. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). "[A]t the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). Even at this stage, "heightened specificity is obligatory": "[t]he complainant must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).

Plaintiffs allege that the Clark Memo harms unspecified members of their organizations who *may*, in some future, hypothetical civil enforcement case or cases, miss out on environmental benefits that they might have obtained absent the Clark Memo. A.C. ¶¶ 113, 120-22, 125-26. CLF further avers that, to avoid this, it will have to spend its own resources to obtain SEPs in additional citizen suit settlements. *Id*. at ¶¶ 127, 133-34.

These generalized allegations of "harm" are insufficient for at least four reasons.

***First***, both claims fail to allege any "invasion of a legally cognizable interest." The generalized nature of Plaintiffs' asserted harms is simply not the kind of "personal stake" required to invoke federal jurisdiction. "[S]tanding to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974). "Vindicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive," not of private interest groups. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992). Further, Plaintiffs must identify *particular members* injured by the Clark Memo, and have not done so. *Draper*, 827 F.3d at ;

*see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("statistical probability that some of [plaintiff's] members are threatened with concrete injury" cannot establish standing).

Further, the Supreme Court has held that private citizens "lack[] a judicially cognizable interest in the prosecution or nonprosecution of another" even if they might stand to benefit from it. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 58 (1st Cir. 1998) ("Even if the existing methods are less effective than the Price Posting Laws, the [appellee] has no warrant to tell the Commission *how* to enforce state laws."). Otherwise, private parties could sue whenever they could allege a potential negative effect on them stemming from a decision not to bring a law enforcement action or to not seek a specific form of relief. This would hamstring the legitimate discretion of the executive by installing "the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action." *Laird v. Tatum*, 408 U.S. 1, 15 (1972). This danger is especially acute when, as here, the claim is made in a facial challenge. Such challenges to "the particular programs agencies establish to carry out their legal obligations are, even when premised on allegations of several instances of violations of law, rarely if ever appropriate for federal-court adjudication." *Defs. of Wildlife*, 504 U.S. at 568.

Nor can CLF demonstrate an "injury in fact" by saying that it will have to spend more of its own time and resources to make up the feared shortfall in environmental improvements. A "voluntary budgetary decision, however well-intentioned, does not constitute Article III injury, in no small part because holding otherwise would give carte blanche for any organization to 'manufacture standing by choosing to make expenditures' about its public policy of choice." *CASA de Md., Inc. v. Trump*, 971 F.3d 220, 239 (4th Cir. 2020) (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 402 (2013)); *accord Katz v. Pershing, LLC*, 672 F.3d 64, 79 (1st Cir. 2012). The only exception to this is when the plaintiff "alleges that [its] injury is having to take or forebear from some action [because of] a reasonably impending threat" of legally cognizable harm. *Katz*,

672 F.3d at 79. As discussed, however, private interest groups do not have any "legally cognizable interest" in whether or how the law is enforced (or not enforced) against others. Nor, as explained below, are there any allegations of "imminent" threat of injury to Plaintiffs' members.

*Second*, Plaintiffs' generalized claims that unspecified members of their respective organizations *may* miss out on a broad range of potential future environmental benefits falls short. A party does not have standing to challenge a policy "in the abstract . . . apart from [a] concrete application that threatens imminent harm to [its] interest." *Summers*, 555 U.S. at 494. Nothing in the Amended Complaint even suggests that it is "imminent"—*i.e.*, "certainly impending"—that ENRD will settle any environmental enforcement actions in New England, the Chicago area, or the coast of Lake Michigan that, but for the Clark Memo, would have resulted in a SEP that would have benefitted Plaintiffs' members. *Id.* at 493; *see also Katz*, 672 F.3d at 71 ("it is not enough that the harm might occur at some future time").

*Third*, Plaintiffs have not met their "burden of pleading . . . concrete facts showing that the defendant's actual action has caused [a] substantial risk of harm." *Clapper*, 568 U.S. at 414 n.5. This is especially true with a facial challenge of a policy the ultimate effects of which are far from certain and which are not tied to any specific interests. A plaintiff must allege facts showing that "there is a *substantial* probability that the substantive agency action . . . created a *demonstrable* risk, or caused a *demonstrable increase* in an existing risk[] of injury to the particularized interests of the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 669 (D.C. Cir. 1996) (emphases added). The long chain of suppositions that allegedly connect the Clark Memo to Plaintiffs' claimed harms—a lack of progress in preventing or cleaning up air and water pollution, *see* A.C. ¶¶ 116-17, 121-22—does not pass muster as they have not alleged any facts that would show a causal connection between the "*incremental environmental effect* the [Clark Memo] would alleg-

13

edly cause . . . and the alleged injury to the particularized interests of the plaintiff[s]." *Fla. Audubon*, 94 F.3d at 665 (emphases added). Even accepting as true Plaintiffs' allegations that particular SEPs have benefitted New England's or Chicago's environment in the past, *see* A.C. ¶¶ 118-20, 122, 126, Plaintiffs do not demonstrate how using only congressionally authorized remedies in the future will be *less* effective. The Clark Memo, for instance, anticipates "an increase in classic forms of injunctive relief" that will remedy the harms caused by a defendant's wrongdoing. Clark Memo at 15 n.18. Further, by eliminating a popular tool for "greenwashing," the threat of a civil environmental enforcement action will now have a greater deterrent effect.

**Fourth**, even if Plaintiffs had concrete and particularized injuries that were actual and imminent—and they do not—this lawsuit simply cannot redress Plaintiffs' injuries. The principal remedy under the APA is to "set aside" the agency action complained of. 5 U.S.C. § 706; *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Yet even if the court "vacates" the Clark Memo, this does not mean that DOJ would now be required to seek SEPs. Aside from a single CAA provision that is not at issue here, no statute even authorizes the use of SEPs in settlement. And no provision requires federal enforcers to settle a case—let alone settle cases for SEPs. Nor do Plaintiffs challenge the Clark Memo's separate rationale that SEPs are simply bad policy because Congress is better suited to decide how to allocate money for environmental improvement. *See* Clark Memo at 17. So, with or without the Clark Memo, *vacatur* could not compel the executive to use SEPs, nor is there any reason to think that the ENRD would do so if the Memo's legal analysis were set aside, since the Clark Memo also rejects SEPs on public policy grounds not challenged by Plaintiffs. *See id.* at 17; *compare* A.C. ¶ 138 (incorrectly alleging that the Clark Memo's "indispensable rationale is its legal conclusion that SEPs violate the [MRA]") *with id.* at ¶¶ 79-81 (discussing the Clark Memo's policy reasons for rejecting SEPs). And even if there were no Clark Memo, DOJ regulations independently prohibit agreements that "require defendants in

14

environmental cases, in lieu of payment to the Federal Government, to expend funds to provide goods or services to third parties for [SEPs]." *See* 28 C.F.R. 50.28.

As the Clark Memo explains, moreover, neither the government nor a court can unilaterally impose SEPs; they are *voluntary* projects that defendants agree to as part of a settlement in exchange for a reduction in penalties. Despite this, Plaintiffs have not even attempted to meet the difficult burden of "addu[cing] facts showing that those choices" to be made by third parties "will be made in such manner as to . . . permit redressability of injury." *Defs. of Wildlife*, 504 U.S. at 562 (citations omitted). Without such facts, the Court has no basis for "presum[ing] either to control or to predict" "the unfettered choices made by independent actors not before" the Court. *Id.*; *see also Clapper*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."); *Bennett*, 520 U.S. at 167.

In sum, tracing causation and redressability here would require knowing (1) whether future defendants would be willing to agree to SEPs; (2) if so, what kinds of SEPs they would select; and (3) whether and how a SEP would benefit specific members of Plaintiffs' organizations. The Amended Complaint does not make factual allegations that answer any of these questions and, for this reason alone, Plaintiffs have failed to demonstrate standing to sue.

## III.   PLAINTIFFS' CLAIMS ARE NOT RIPE.

In addition to lacking standing, the inchoate nature of Plaintiffs' facial attack also makes it unripe. The ripeness doctrine in APA cases generally prohibits facial challenges, instead requiring plaintiffs to wait until "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the [agency's decision] to the claimant's situation in a fashion *that harms or threatens to harm him.*" *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990) (emphasis added). Plaintiffs have not

15

waited for such development, and their claims fail to show (1) that their dispute is fit for judicial decision or (2) that they would suffer any hardship if the Court chooses *not* to review the administrative action. *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967).

The Supreme Court has consistently held that facial challenges to agency actions are not appropriate for judicial review, subject only to a few limited exceptions not applicable here. In *Ohio Forestry Ass'n. v. Sierra Club*, 523 U.S. 726 (1998), the Court rejected a facial challenge to a forest management plan for an entire National Forest as unripe, explaining that review should wait for application of the plan's provisions in decisions approving *specific* projects. Similarly, in *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993), the Court held that a facial challenge is ripe *only* where plaintiffs face "the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation." *Id.* at 57.

The Clark Memo applies only to ENRD and, thus, does not direct the behavior of Plaintiffs or their members or cause them other immediate consequences or hardships. *See* Clark Memo at 1 n.1. Nor is it self-executing since any claimed effects flow from specific settlements and independent, voluntary decisions of future defendants and prosecutors, not the memo itself. Under the framework of *Abbot Labs* and *Ohio Forestry*, therefore, this challenge is not fit for judicial review.

Plaintiffs attempt to escape this conclusion by insinuating that their challenge is purely legal in nature. Thus, while they admit that the Clark Memo relies upon a variety of policy considerations, Plaintiffs downplay their importance, characterizing them as mere "musings" that played no role in the Clark Memo's "essential rationale." A.C. ¶ 82. This fails in two respects. First, it is factually incorrect. The Clark Memo concludes that "even if SEPs were not *per se* unlawful," they should still "be disallowed as a matter of sound policy and prosecutorial discretion." Clark Memo at 17-18. In AAG Clark's discretionary policy view, SEPs (1) "tread too close to the line" drawn by the MRA; and (2) give to the executive branch discretionary spending power that

Congress is better suited to use for the benefit of the public. *Id*. Second, even if Plaintiffs were correct, a contention that a case is purely legal in nature does not let a plaintiff avoid the ripeness requirement. If a case is not fit for review under the framework of *Abbot Labs* and *Ohio Forestry*, and postponing review would impose no hardship, the case is not ripe. *See, e.g.*, *Nat'l Park Hospitality Ass'n v. Dept. of the Interior*, 538 U.S. 803, 812 (2003) (holding the dispute not ripe for review notwithstanding plaintiff's contention that the issues in dispute were purely legal in nature).

## IV.    THE CLARK MEMO IS NOT A "FINAL AGENCY ACTION."

Section 702 of APA allows for judicial review only of "final agency action," which the Supreme Court has defined as action that reflects the "culmination" of the agency's action and that "determine[s]" private parties' "rights," "obligations," and other "legal consequences." *Bennett*, 520 U.S. at 178. The finality requirement exists precisely to prevent plaintiffs from bringing suits like this one to challenge inchoate changes in agency activities, ensuring that "judicial review does not reach into the internal workings of the government, and is instead properly directed at the effect that agency conduct has on private parties." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019); *see also FTC v. Standard Oil Co.*, 449 U.S. 232 (1980); *Defs. of Wildlife*, 504 U.S. at 568.

As the preceding discussion indicates, the Clark Memo does not qualify as "final agency action" under this definition since it is a purely internal document that has no direct effect on Plaintiffs or any other private parties. The "culmination" of the Department's process would not come to pass unless and until the principles of the Clark Memo were actually applied in a specific settlement. Even then, it would be the settlement contract, not the Clark Memo, that constituted the relevant final agency action.

The lack of finality is particularly evident with respect to the claims against EPA and its Administrator, which rely solely on allegations about what DOJ officials have stated *about* EPA,

not what that agency itself is ever alleged to have said or done. This alone is sufficient to dismiss the EPA defendants. The first claim Plaintiffs make on this score is an allegation that AAG Clark interprets his memo "as applying not only to ENRD, but also to EPA" and has stated "that he expects EPA to implement his memorandum for that agency's *administrative* enforcement actions." A.C. ¶ 106. This allegation can be broken down into two sub-claims—first, that AAG Clark interpreted the Clark Memo as applying to *both* DOJ and EPA, and second, that he expected EPA to apply the policy to administrative settlements. The first sub-claim is simply wrong. By its express terms, the Clark Memo binds only ENRD. *See* Clark Memo at 18. The second is irrelevant. AAG Clark does not have the authority to direct EPA to refrain from including SEPs in its civil administrative settlements, and his "expect[ation]" that other officials in a different agency will agree with him neither augments his authority nor limits EPA's discretion.

The second set of allegations, which appears for the first time in the Amended Complaint, claims that the EPA Defendants "adopted" the Clark Memo's SEPs prohibition without notifying the public. In support, Plaintiffs cite the comments of a different DOJ official. *See, e.g.*, A.C. ¶¶ 107-08 (citing a news article that quotes Principal Deputy Assistant Attorney General Jonathan Brightbill as saying that EPA "has adopted the Department's position in its approach to its own administrative settlements"; and claiming that "EPA has not publicly released the rule identified by [Brightbill]"). But Plaintiffs' reliance on hearsay from someone outside of EPA does not demonstrate that EPA has itself taken any final action with respect to administrative settlements.

Plaintiffs have not alleged any final agency action *by EPA*. Instead, they seek to rely on comments made by officials from a *different* agency. The Court need not "accept as true a legal conclusion couched as a factual allegation," even at the pleading stage. *Twombly*, 550 U.S. at 555. Thus, Plaintiffs' unsupported challenge to alleged EPA action must fail regardless. *See, e.g., Stone v. U.S. Embassy Tokyo*, No. 19-3273, 2020 WL 6746925 at *2 (D.D.C. Nov. 16, 2020) (plaintiff's

complaint failed, in part, because plaintiff "allege[d] no agency action, inaction, or involvement at all.").

Finally, because Plaintiffs have failed to allege plausible claims of final agency action against the EPA defendants, this provides a separate and independent basis for why standing is lacking to sue them since no harm can be "fairly traced" to their conduct nor would *vacatur* change or limit their discretion. *See Sierra Club, Inc. v. Granite Shore Power LLC*, No. 19-CV-216-JL, 2019 WL 8407255, at *4 (D.N.H. Sept. 13, 2019) (Plaintiffs must demonstrate standing "for each claim they press and for each form of relief they seek, with respect to each defendant.") (citing *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 769 n.6 (1st Cir. 2011)).

## CONCLUSION

Defendants respectfully request that this Court dismiss Plaintiffs' Amended Complaint with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Hunter J. Kendrick*
JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*
R. JUSTIN SMITH
*Section Chief, Law and Policy Section*
MICHAEL B. BUSCHBACHER
ANDREA L. BERLOWE
HUNTER J. KENDRICK
*Attorneys*

Environment and Natural Resources
 Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 514-3473
hunter.j.kendrick@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I certify that this document was filed through the Court's ECF system, which will cause copies to be sent to all counsel of record.

Dated: January 8, 2021

/s/ Hunter J. Kendrick
HUNTER J. KENDRICK